## COMMONWEALTH *vs.* MICHAEL JANOVICH.

No. 00-P-628.

Suffolk. June 25, 2001. - June 3, 2002.

Present: DREBEN, CYPHER, & BERRY, JJ.

*Due Process of Law,* Probation revocation. *Practice, Criminal,* Revocation of probation. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Cross-examination, Hearsay, Previous testimony of unavailable witness, Prior inconsistent statement. *Witness,* Unavailability.

In a case of domestic violence involving the victim witness's recantation, in the defendant's final probation revocation hearing, of prior testimony given at a preliminary surrender hearing concerning assaults by the defendant, the judge did not err in admitting a summary of the witness's prior testimony concerning the assaults as introduced by a probation officer during the Commonwealth's case-in-chief where, since the Commonwealth had good cause for not using the victim as a witness and instead offered other reliable evidence, the requirements of due process were satisfied [44]; where the testimony was admissible either as prior reported testimony, or as prior inconsistent statements [44-48]; where, since good cause existed for not calling the witness, the defendant's right to confrontation could be denied, and the defendant's questioning of the victim witness as a defense witness in actuality addressed most of the recognized goals of cross-examination [48-50]; and where, based on the evidence presented, the judge was not compelled to reject the original incriminating testimony that the defendant assaulted the victim and accept the later exculpatory recantation [50].

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on July 13, 1998.

A probation revocation proceeding was heard by *Sarah B. Singer*, J.

*Sean T. Delaney* for the defendant.

BERRY, J. In this case of domestic violence involving the recantation in a final probation revocation hearing of prior testimony given at a preliminary surrender hearing, we determine that it was not error to admit a summary of the

witness's prior testimony as introduced by a probation officer in the Commonwealth's direct case.

1. *Procedural background.* In 1998, the defendant pleaded guilty to violating a G. L. c. 209A protective order and threatening to commit a crime. At that time, he was sentenced to two years' probation. During his probationary period, the defendant was charged with a probation violation based on a report filed by Lisa Rideout that the defendant had assaulted her in two separate incidents.

In the preliminary surrender hearing held on February 3, 1999, Rideout testified in the Commonwealth's case[1] and described the assaults.[2] At this initial hearing, probation Officer Straughter conducted the questioning of Rideout; defense counsel conducted cross-examination. Notwithstanding her February 3 testimony, at the final probation revocation hearing held on February 25, 1999, Rideout appeared as a defense witness and recanted her description of the assaults given at the first hearing. The judge expressed misgivings about whether "she is making these [recanting] statements on her own." The record reflects that Rideout was pregnant with the defendant's second child, and she had expressed concerns about the defendant being jailed as a consequence of her testimony at the revocation proceedings.

Remaining doubtful concerning the reliability of the recantation and the factors that influenced it, the judge admitted in evidence in the Commonwealth's case-in-chief a summary by probation Officer Straughter of Rideout's testimony from the preliminary probation surrender hearing. In her testimony in the defense case, Rideout admitted she had previously testified differently, but now asserted that, while there had been altercations, "there was no physical altercation, there was no abuse," and "[the defendant] did not strike [her]." The judge found the

[1]Rideout described one assault in which the defendant spit at her, smacked her across the face and then beat her, striking her mouth and eye. The second assault occurred shortly thereafter, when she and the defendant had argued about his having to attend domestic violence prevention classes arising out of an earlier abuse case. As the argument escalated, the defendant grabbed Rideout, threw her into a car and hit her in the back of the head.

[2]The description of the assaults at the preliminary surrender hearing was consistent with Rideout's original call to the probation department.

defendant in violation of his probation based on the probation officer's summary of Rideout's prior testimony concerning the assaults.

2. *The due process claim.* The defendant argues that he was denied due process because the probation officer's summary was unreliable and unsubstantiated hearsay, and was contrary to Rideout's live testimony at the final hearing, which denied that an assault had happened. He also raises right of confrontation issues.

We note at the outset the accepted law that revocation proceedings do not endow probationers with plenary constitutional protections. "If the Commonwealth has 'good cause' for not using a witness with personal knowledge, and instead offers reliable hearsay or other evidence, then the requirements of due process are satisfied." *Commonwealth* v. *Durling*, 407 Mass. 108, 118-119 (1990). See *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972); *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 786 (1973). To the extent that probationers are entitled to due process rights, including the right to confront and cross-examine adverse witnesses, those rights are subject to more "flexible" due process balancing. *Durling, supra.* "[T]he probationer's right of confrontation is far from absolute . . . [and] when 'good cause' exists . . . the right to confrontation may be denied. . . ." *Id.* at 115, citing *Gagnon, supra.* As *Durling* recognized, "there are often valid reasons for not presenting live witnesses." *Id.* at 117. Given that, we consider, then, two established hearsay exceptions because "[e]vidence which would be admissible under standard evidentiary rules is presumptively reliable." *Id.* at 118.[3]

3. *Hearsay exceptions as grounds for admission.* One firmly

[3]Although the District Court Rules for Probation Violation Proceedings, which became effective on January 3, 2000, did not apply to these proceedings, they are nevertheless instructive.

"(a) *Admissibility of Hearsay Evidence.* Hearsay evidence shall be admissible at probation violation hearings.

"(b) *Sufficiency of Evidence When Case Rests Solely on Hearsay.* Where the sole evidence submitted to prove a violation of probation is hearsay, that evidence shall be sufficient only if the court finds in writing (1) that such evidence is substantially trustworthy and demonstrably reliable and (2), if the alleged violation is charged or uncharged criminal

rooted exception to the hearsay rule is that for prior reported testimony. See generally *Ohio* v. *Roberts*, 448 U.S. 56 (1980). Had a transcript or tape of Rideout's testimony from the preliminary surrender hearing been available and offered at the later final hearing, that evidence may have been admissible as falling within the well-established prior reported testimony exception to the hearsay rule. However, even in the absence of a transcript or tape, "[p]rior reported testimony may be proved by means other than an official transcript of the earlier proceedings . . . . The testimony may be presented by a witness who was present at the former proceeding and who is able substantially to reproduce the material testimony." *Commonwealth* v. *Taylor*, 32 Mass. App. Ct. 570, 576 (1992), citing *Commonwealth* v. *DiPietro*, 373 Mass. 369, 392-393 (1977).[4]

For this hearsay exception to apply in a criminal proceeding,

---

behavior, that the probation officer has good cause for proceeding without a witness with personal knowledge of the evidence presented."

The commentary to rule 6 states:

"[I]f hearsay evidence qualifies under any of the legal exceptions to the hearsay rule. . . . it is presumptively reliable. . . . However, in keeping with the informal nature of these hearings and the fact that the case against the probationer is the responsibility of a probation officer rather than a trained criminal prosecutor, it would appear that the court should make a determination of the reliability of any hearsay, rather than [limiting the analysis to] whether the hearsay qualifies as an exception to the hearsay rule so as to merit presumptively reliable status. . . ."

Cast another way, certain evidence, as in this case, may fall within a firmly rooted exception to the hearsay rule, and is thereby admissible once the foundational requirements of the applicable exception are met. The court may also consider the reliability of the evidence, apart from a specific hearsay exception, and may admit hearsay evidence under the *Durling* reliability and good cause standards. A decision whether the admissibility of a particular piece of evidence is best analyzed under a particular hearsay exception or under the *Durling* general standards for admissibility lies in the sound discretion of the hearing judge.

[4]The better and preferred practice, of course, is introduction of a tape or a transcript of the witness's prior testimony. However, if there are pragmatic difficulties or timing issues that hinder the production of either of these, a summary may suffice. For example, a transcript may not be available given the time necessary to prepare that document; a tape may not be readily available because the witness's recantation may have come to the attention of the Commonwealth too close in time to the later hearing to allow sufficient time to obtain such a tape; or, it may be impracticable for the presiding judge to

two essential elements must be present in the record: "[p]rior reported testimony is admissible only when it is established that (a) the witness is 'unavailable' to testify at trial,[5] and (b) the prior testimony is reliable." *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982). The procedural history and the circumstances of the recantation at the final probationary hearing were such that the probation officer's summary met these two evidentiary requirements for admission as prior reported testimony. As to the first element, the witness's recantation "made her practically unavailable as a witness for the prosecution." *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 558 (1997). By the recantation, the witness was rendered "*effectively unavailable* in the same sense that a declarant who refuses to testify based upon the assertion of her constitutional privilege against self-incrimination is considered unavailable, so that the declarant's reliable hearsay statements may then be admitted as evidence" (emphasis added). *Id.* at 558, citing *Commonwealth* v. *Koonce*, 418 Mass. 367, 378 n.6 (1994), and *Commonwealth* v. *Alvardo*, 36 Mass. App. Ct. 604, 606-607 (1994). As to the second element concerning the reliability of the prior reported testimony, Rideout's description of the assaults given at the preliminary probationary hearing was, as previously noted, consistent with and corroborated by her original report to the probation department, which was closer in time to the events in question. Moreover, the judge's comments and ultimate findings indicate that she found the original testimony more reliable than the influenced recantation.

Another established hearsay exception addressed in the case-law is the prior inconsistent statement doctrine. In light of Ride-

listen to the entire tape during the course of the ongoing hearing. The determination of whether a summary should be accepted rests in the sound discretion of the judge.

[5]To state what may be obvious, unavailability does not turn on physical absence or presence: The requirement in the evidentiary rule "is sometimes referred to as the unavailability of the witness, but it may be more accurately described as the unavailability of the testimony of the witness, for the witness may be physically present as she was in this case, but [it is] her testimony [that] is not available. . . . [Thus] we are concerned here with the availability of the testimony of the witness at a later trial, not merely the physical presence of the witness." *Commonwealth* v. *DiPietro*, 373 Mass. 369, 380, 382 (1977).

out's changed story of no physical assault, her prior inconsistent statements at the preliminary surrender hearing — given under oath and subject to cross-examination — were admissible as substantive evidence under the prior inconsistent statement doctrine. The witness acknowledged that she had testified differently in the prior proceeding and had described assaults she was now denying. In a somewhat analogous context, our cases have accepted as probative evidence — upon the establishment of certain foundation requirements — prior inconsistent grand jury statements and a prior identification where the witness, even though not making an in-court identification, acknowledges the prior out-of-court identification. *Commonwealth* v. *Daye*, 393 Mass. 55, 60, 74-75 (1984). *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 409-411 (1978). Cf. *Commonwealth* v. *Sineiro*, 432 Mass. 735, 745 (2000) ("We hold, under the principles set forth in the *Daye* case, as further analyzed here, that a judge, who is warranted in concluding that a witness at a criminal trial is falsifying a lack of memory, [and recantation of prior testimony,] may admit in evidence for substantive consideration by the jury the witness's prior [inconsistent] testimony at a probable cause hearing, so long as that testimony was that of the witness and was not coerced and the witness is present at trial for cross-examination").[6]

To be noted in this case, however, is that the admission of Rideout's prior inconsistent statements was not done in a conventional manner. The statements were not admitted by development in cross-examination or previewed by the means of a voir dire as in *Sineiro*. Instead, the witness's prior

---

[6]The admission of prior inconsistent statements as substantive evidence in probationary hearings has not been directly addressed in the case law. Existing precedent holds that the doctrine of substantive admission applies at trial, both to prior inconsistent statements — not subject to cross-examination — given before a grand jury, *Commonwealth* v. *Daye*, *supra*; *Commonwealth* v. *Clements*, 436 Mass. 190 (2002), and to prior inconsistent statements — subject to cross-examination — given at probable cause hearings, but subsequently forgotten by a falsified lack of memory. *Commonwealth* v. *Sineiro*, *supra*. Given these holdings and given that the rules of evidence do not apply to probation revocation hearings, it would seem to follow, a fortiori, that the prior inconsistent statement doctrine, with proper foundation, would apply in probation proceedings, so as to give substantive weight to the prior inconsistent statement made under oath.

inconsistent statements were admitted in the Commonwealth's direct case, it appears, based on a representation by defense counsel that Rideout would be a defense witness and would testify differently from her prior testimony to the effect that the defendant did not assault her. Absent compliance with the conventional mode of a voir dire or introduction in cross-examination, in this case, the prior inconsistent statements should have been offered de bene in the Commonwealth's direct case and only admitted as substantive evidence later in the defense case when the witness acknowledged having made the statements. However, in view of that acknowledgment,[7] we consider this difference in the manner of admission of little consequence.

Evidentiary exceptions to the hearsay rule are not the exclusive means of determining reliability. Even if the proffered evidence concerning the recanted testimony were not admissible under the exceptions to the hearsay rule discussed herein, the judge in her discretion could admit such statements if she determined that there was good cause for not calling the witness and the statements were sufficiently reliable. *Durling, supra* at 118.

4. *Confrontation issue.* Although somewhat unclear, the defendant's confrontation claim appears to be that Rideout's

---

[7]At the final revocation hearing, Rideout provided the following testimony in the defense case:

Q. "What was your testimony on February 3, 1999?"

A. "I stated that we had gotten into an argument and during that argument that [the defendant] had struck me."

Q. "What is your testimony today as towards the events around February 26, 27?"

A. "We did argue. We argued in the car and then that was the end of it. Nothing else happened. There was no physical, there was no abuse or anything like that."

Q. "And what was your testimony on February 3 regarding that?"

A. "I stated in my testimony that in my car, he had struck me in the face and that he had [inaudible], which didn't happen, we were arguing about that, the financial part of that, and the baby, but there was no physical."

"live" testimony in the defense case was stronger than the Commonwealth's summary of her prior testimony, that the Commonwealth bore the burden of proof, and that, because the summary was presented in the Commonwealth's direct case, his confrontation rights were overridden. The defendant further contends that the circumstance that he elected to present evidence, including calling the victim to testify, did not amend the constitutional violation.

The defendant's analysis fails to account for the constitutional limitations on confrontation where a firmly rooted exception to the hearsay rule applies and also misperceives the more limited confrontation rights that attend a probation revocation hearing. That is to say, even if Rideout had not testified in the defense case at the final hearing, the defendant's confrontation rights would not have been violated by admission of the summary of the prior reported testimony because Rideout previously had testified under oath and subject to cross-examination. The claim that the introduction of prior reported testimony "violated [the defendant's] right under the Sixth Amendment to the United States Constitution . . . and his right under art. 12 of the Declaration of Rights of the Massachusetts Constitution . . . has long since been foreclosed against the defendant's contention by numerous decisions of this court and other courts." *Commonwealth* v. *DiPietro*, 373 Mass. 369, 376 (1977). See generally *Ohio* v. *Roberts*, 448 U.S. 56 (1980). The same principle would apply to the admission of a prior statement given under oath and meeting all the foundation requirements (including the witness's acknowledgment) of the prior inconsistent statement doctrine, as articulated in *Daye, supra.* See also *California* v. *Green*, 399 U.S. 149, 158 (1970). Assuming that no evidentiary hearsay exception were applicable, still, in the context of probationary hearings, the constitutional rights to confrontation and the related cross-examination rights are not absolute. When "good cause" exists for not calling the witness, "the right to confrontation may be denied." *Durling*, 407 Mass. at 118-199, quoting *Gagnon*, 411 U.S. at 786. Finally, in this case, it may be said that "[t]he defendant's questioning of [Rideout] as his defense witness in actuality addressed most of the recognized goals of cross-examination . . . ." *Com-*

*monwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 556 (1997). See *Commonwealth* v. *Whelton*, 428 Mass. 24, 27 (1998) (admission of domestic assault victim's out-of-court statements did not require reversal where "[t]he defendant called the victim to the stand and therefore had ample opportunity to cross-examine her about the statements"). For these reasons, the confrontation challenge to the introduction of the evidence is unavailing.

5. *The weight of the evidence.* Lastly, we reject the defendant's other claimed error that the judge relied on uncorroborated hearsay alone and did not afford sufficient weight to Rideout's exculpatory recantation and her acknowledgment that she had been less than truthful in other instances in accusing the defendant of a physical assault. Assessing the weight and credibility of the evidence was within the judge's exclusive province, as was the determination to "accept or reject, in whole or in part, the testimony presented . . . [and it] does not matter that some of the evidence could be characterized as equivocal or contradictory." *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991). Based on all that she saw and heard in the proceeding before her, the judge was surely not compelled to reject the original incriminating testimony that the defendant assaulted Rideout and accept the new exculpatory version, especially where the judge had misgivings about the influences that had led to the recantation.

*Order revoking probation and imposing sentence affirmed.*